Erik A. Christiansen (UT #7372)
PARSONS BEHLE & LATIMER
#1800, 201 Main Street
Salt Lake City, UT 84111
Telephone: (801) 532-1234
Facsimile: (801) 536-6111

*Attorneys for Ellucian Company, L.P.*

# UNITED STATES DISTRICT COURT
# DISTRICT OF UTAH (CENTRAL DIVISION)

| | |
|---|---|
| ELEUTIAN TECHNOLOGY, INC.,<br><br>Plaintiff,<br>v.<br><br>ELLUCIAN COMPANY L.P.,<br><br>Defendant. | **ELLUCIAN'S ADDITIONAL REQUESTED BRIEFING IN SUPPORT OF ITS MOTION TO DISMISS FOR LATE SERVICE OF PROCESS PURSUANT TO FED. R. CIV. P. 12(b)(5) AND 4(m) AND FOR FAILURE TO STATE A CLAIM UNDER FED. R. CIV. P. 12(b)(6) AND 8**<br><br>Case No. 2:15-CV-00649-BSJ<br><br>Hon. Judge Bruce S. Jenkins |

Defendant Ellucian Company L.P. ("Ellucian") by and through its counsel of record in this matter, hereby submits this Additional Requested Briefing in Support of Its Motion to Dismiss for Late Service of Process Pursuant to Federal Rules of Civil Procedure ("Rule" or "Rules") 12(b)(5) and (4)(m) and For Failure to State a Claim Under Rules 12(b)(6) and 8.

# Table of Contents

Additional Facts ............................................................................................................. i

Introduction ................................................................................................................ iii

Argument .................................................................................................................... 1

    I.      Automatic assignment of the case to a magistrate, without consent and without supervision by an Article III Judge, resulted in an unconstitutional order ............................................................................................................. 1

           A.      Assignment and referral of magistrate judges in the District of Utah ......... 1

           B.      The Constitution and section 636(b) limit the authority of magistrate judges ............................................................................................................ 2

           C.      The parties did not consent to Magistrate Pead and there was no Article III Judge exercising supervision over the case ................................................ 3

    II.     Magistrate Pead was not authorized to issue the Order on ETI's dispositive motion ...................................................................................................................... 5

           A.      Whether a motion is potentially dispositive is a practical inquiry ............... 5

           B.      ETI's Motion was "dispositive" because it was filed after the deadline ..... 7

           C.      The motion was also dispositive of Ellucian's statute of limitations ("SOL") defenses ........................................................................................ 9

Conclusion ................................................................................................................ 10

# Federal Cases

*Allendale Mut. Ins. Co. v. Rutherford*,
　178 F.R.D. 1 (D. Me. 1998) .................................................................................. 10

*Amaya v. Garden City Irrigation, Inc.*,
　645 F. Supp. 2d 116 (E.D.N.Y. 2009) ................................................................... 10

*Anastasion v. Credit Service of Logan, Inc.*,
　2011 WL 1376050 (D. Utah Apr. 12, 2011) ............................................................ 8

*Blake v. Peak Prof'l Health Servs. Inc.*,
　191 F.3d 455 (7th Cir. 1999) ........................................................................... 7, 8, 9

*Christison v. Biogen Idec Inc.*,
　2016 WL 3546242 (D. Utah June 23, 2016) ............................................................ 6

*Commodity Futures Trading Com'n v. Schor*,
　478 U.S. 833 (1986) .................................................................................................. 3

*Cooper v. Shelby County, Tenn.*,
　2010 WL 3211677 (W.D. Tenn. Aug. 10, 2010) ...................................................... 8

*Dahl v. Dahl*,
　2015 WL 670274 (D. Utah Feb. 17, 2015) .............................................................. 5

*First Union Mortg. Corp. v. Smith*,
　229 F.3d 992 (10th Cir. 2000) .................................................................................. 6

*Geras v. Lafayette Display Fixtures, Inc.*,
　742 F.2d 1037 (7th Cir. 1984) .................................................................................. 5

*Gomez v. United States*,
　490 U.S. 858 (1989) .................................................................................................. 3

*Gore v. RBA Group, Inc*,
　2009 WL 884565 (S.D.N.Y. Mar. 27, 2009) ............................................................ 7

*In Re U.S. Healthcare*,
　159 F.3d 142 (3d Cir. 1998) ...................................................................................... 6

*Jeffrey S. v. State Bd. of Educ. of State of Ga.*,
　896 F.2d 507 (11th Cir. 1990) ............................................................................... 3, 4

*Kalra v. City of New York*,
　2009 WL 857391 (S.D.N.Y. Mar. 31, 2009) ............................................................ 8

*Lundy v. Adamar of New Jersey, Inc.*,
　34 F.3d 1173 (3d Cir. 1994) .................................................................................... 10

*Lynn v. Shultz*,
　2013 WL 3935122 (D. Kan. July 30, 2013) ............................................................. 8

*Mnzava v. Diverse Concepts, LLC*,
   2015 WL 6449656 (E.D. Tenn. Oct. 26, 2015) .................................................................... 7

*N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*,
   458 U.S. 50 (1982) ......................................................................................................... 2, 3, 5

*Ocelot Oil Corp. v. Sparrow Indus.*,
   847 F.2d 1458 (10th Cir. 1988) .................................................................................. 1, 2, 5, 9

*Paden v. Testor Corp.*,
   2004 WL 2491633 (N.D. Ill. Nov. 2, 2004) .......................................................................... 8

*Peretz v. United States*,
   501 U.S. 923 (1991) ............................................................................................................ 3

*Terry v. Colvin*,
   2015 WL 4693895 (D. Utah Aug. 6, 2015) ......................................................................... 4

*Tucker v. U.S. Dept. of Army*,
   56 F.3d 1384 (5th Cir. 1995) ............................................................................................... 8

*United States v. Raddatz*,
   447 U.S. 667 (1980) ........................................................................................................ 2, 3

*Vogel v. U.S. Office Prods. Co.*,
   258 F.3d 509 (6th Cir. 2001) ............................................................................................ 6, 7

*Wellness Int'l Net. v. Sharif*,
   135 S. Ct. 1932 (2015) ........................................................................................................ 3


## Federal Statutes

28 U.S.C. § 636(b) .................................................................................................... *passim*
28 U.S.C. § 636(c) ................................................................................................................ 1


## Federal and Local Rules

Fed. R. Civ. P. 4(m) .................................................................................................... 7, 8, 9
Fed. R. Civ. P. 12(b)(6) ........................................................................................................ 6
Fed. R. Civ. P. 72 ............................................................................................................. 1, 7
DUCivR 72-2(a)(6) ............................................................................................................. 1

## Other Authorities

32 Am. Jur. 2d Federal Courts § 135 ............................................................................... 6

S. Rep. No. 94-625 at 10 (1976) ...................................................................................... 2

The Federalist No. 79, p. 491
   (H. Lodge ed. 1888) (A. Hamilton) ............................................................................ 2

## ADDITIONAL FACTS

1. As is the practice in the administration of the Court, the Honorable Magistrate Judge Pead was randomly and automatically selected from the initial case assignment wheel as the judge initially assigned to this case when the Complaint (Dkt. No. 2) was filed on September 9, 2015 and remained the randomly selected judge until March 4, 2016. *See* Dkt. Nos. 1, 2 and 19.

2. No other judge was assigned to the case until March 4, 2016.

3. Neither a summons nor copy of the Complaint was served on September 9, 2015. *See* Dkt. No. 6 at 1-2.

4. The 120-day time limit for Eleutian Technology, Inc. ("ETI") to serve its Complaint on Ellucian under Rule 4(m) expired on January 7, 2016. *Id.* at 2.

5. ETI filed its *ex parte* motion for extension of time to make service of the summons and Complaint on January 26, 2016 (the "Motion"). *Id.* at 1-2.

6. The Motion requested "Expedited Consideration." *Id.* at 1.

7. ETI's Motion was not served on Ellucian (or even emailed to Ellucian's counsel). *See* Dkt. No. 20-1 ¶ 4.

8. Magistrate Judge Pead signed and entered the order granting the Motion on January 28, 2016 (the "Order"). *See* Dkt. No. 7.

9. ETI finally served a summons and copy of the Complaint on Ellucian on January 29, 2016. *See* Dkt. No. 9.

10. Article III Judge the Honorable Bruce Jenkins became the new randomly selected judge assigned to this case on March 4, 2016 (after the parties submitted their respective

"Consent/Reassignment Forms" as to a magistrate judge being randomly initially assigned to the case). *See* Dkt. No. 19.

11. Ellucian filed its Motion to Dismiss with Article III Judge Jenkins on March 11, 2016. *See* Dkt. No. 20.

12. On June 15, 2016, the Court held a hearing on Ellucian's Motion to Dismiss (the "Hearing").

13. During the Hearing, the Court expressed interest in several questions, including the "power on the part of the magistrate," Hearing Tr. (Dkt. No. 30) at 33:9, "the appropriateness of the order entered by the magistrate," *id.* at 33:17-18, "who refers and by what power do we refer," *id.* at 37:2, "at what point in time is there an exercise of power that has been referred [to the magistrate]," *id.* at 37:6-7, as well "the legitimacy of the exercise of power by the magistrate in entering the order that he entered," *id.* at 56:25-57:1, "what do[es] . . . authoriz[e] [the magistrate] to deal with that particular subject pre-consent and post-assignment," *id.* at 57:1-3, and "that specific subject which is a power question preceding the standard question, preceding a ratification question or, indeed, entering an order that says that it is okay or not okay," *id.* at 57:8-11.

14. Near the end of the Hearing, the Court asked ETI to respond the above questions by submitting an additional brief by July 10, 2016, and Ellucian to reply 15 days thereafter. *Id.* at 59:7-24.

15. ETI submitted its brief on July 11, 2016. *See* Dkt. No. 32.

## INTRODUCTION

It is only during the (ordinarily uneventful) window between filing of the complaint and filing of the Consent/Request for Reassignment Form[1] that the powers of a magistrate judge are constitutionally uncertain. But ETI's failure to make timely service combined with its post-120 day *ex parte* Motion to extend time calls the question. Having proceeded in this fashion, ETI placed Magistrate Judge Pead in the unfortunate position of having to rule on a motion effecting the outcome of this case. Because of the seemingly-benign nature of ETI's request, and because Ellucian had no opportunity to respond, Magistrate Judge Pead ruled on the Motion almost certainly not knowing that he was exceeding his power when granting it.

The "goal" of automatic assignment of magistrates in the District of Utah is to "encourag[e] litigants to consent to the exercise of full civil case management by the magistrate judges of the district." General Order 11-001. General Order 15-003 further clarifies that the "chief judge" is required to "adjust the case assignment wheel . . . for the direct assignment of civil cases to magistrate judges at case opening to facilitate parties' *to consent* to the magistrate judge." General Order 15-003, § 1-2 (emphasis added). The principle is to allow as many cases as possible to proceed before magistrates by obtaining the parties' consents early in the case. The purpose is not to allow magistrates to make rulings that can affect the outcome of a case without the parties' consent and without supervision by an Article III Judge. In the ordinary case where the plaintiff promptly serves the complaint, the risk of such an occurrence is negligible. But the beginning of this case was far from ordinary.

---

[1] Shortly after commencement of a case the clerk serves upon the parties the Consent/Request for Reassignment Form, *see e.g,*. Dkt. No. 16, which is due within fifteen days of receipt.

# ARGUMENT

## I. Automatic assignment of the case to a magistrate, without consent and without supervision by an Article III Judge, resulted in an unconstitutional order

### A. Assignment and referral of magistrate judges in the District of Utah

The District of Utah's General Order 11-001 allows assignment of civil cases to magistrate judges "from the initial case assignment wheel." *Id.* at 1. Cases assigned to a magistrate judge are "deemed to be ***assigned*** to the Chief Judge and ***referred*** to the magistrate judge for the exercise of all authority under 28 U.S.C. [§] 636(b)" until the parties "decide whether to consent to the exercise of full civil jurisdiction." *Id.* at 1; *see also* DUCivR 72-2(a)(6). In other words: (i) there is no doubt that in this early window the case is to be "referred" (*not* assigned) to the magistrate judge and (ii) the General Order gives magistrates no more authority than is authorized by 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72.

Section 636(b)(1)(A) provides that a magistrate may "determine any pretrial matter pending before the court, except[, *inter alia*, motions] to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action." Under § 636(b)(1)(B), a district court may hear and "submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion excepted in subparagraph (A)." Federal Rule of Civil Procedure 72 "reflects the division in section 636(b) between matters as to which magistrates may issue orders and matters as to which magistrates may make only proposed findings of fact and recommendations." *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1462 (10th Cir. 1988). Rather than "list the specific motions which fall into each category," Rule 72 "simply refers to matters as either 'dispositive' or 'not dispositive.'" *Id.* (citing Fed. R. Civ. P. 72). "The notes to Rule 72 explicitly tie the two categories used in

1

Rule 72 to referrals under either subsection (A) or subsection (B) of section 636." *Id.* Thus, the Tenth Circuit interprets section 636(b)(1) as requiring that "motions not designated on their face as one of those excepted in subsection (A) are nevertheless to be treated as such a motion when they have an identical effect." *Id.*

### B. The Constitution and section 636(b) limit the authority of magistrate judges

"The judicial power of the United States must be exercised by courts having the attributes prescribed in Art. III" of the Constitution, including lifetime appointment and "fixed and irreducible compensation for their services." *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 59 (1982). These requirements are not anachronisms to be ignored. "Next to permanency in office, nothing can contribute more to the independence of the judges than a fixed provision for their support . . . . *a power over a man's subsistence amounts to a power over his will.*" *Id.* at 60 (citing The Federalist No. 79, p. 491 (H. Lodge ed. 1888) (A. Hamilton) (emphasis in original)). The Constitution therefore "unambiguously enunciates a fundamental principle—that the 'judicial Power of the United States' must be reposed in an independent Judiciary." *N. Pipeline*, 458 U.S. at 60.

In *United States v. Raddatz*, 447 U.S. 667 (1980), the Supreme Court evaluated the constitutionality of the referral of "certain pretrial motions . . . to a magistrate for initial determination" under 28 U.S.C. § 636(b). *N. Pipeline*, 458 U.S. at 79. The Court noted that the legislative history of section 636(b) "emphasized that the purpose of the [statute] was to vest 'ultimate adjudicatory power over dispositive motions' in the district court." 447 U.S. at 675 (citing S. Rep. No. 94-625 at 10 (1976)). "The Court [in *Raddatz*] observed that the magistrate's proposed findings and recommendations were subject to *de novo* review by the district court."

*N. Pipeline*, 458 U.S. at 79. The Court also "noted that the magistrate considered motions only upon reference from the district court." *Id.* Thus "the ultimate decisionmaking authority respecting **all pretrial motions** clearly remain[s] with the district court." *Id.* (emphasis added).

Deviation from this rule is constitutional only when the parties agree to it. *See, e.g., Commodity Futures Trading Com'n v. Schor*, 478 U.S. 833, 848 (1986) ("Article III's guarantee of an impartial and independent federal adjudication is subject to waiver"); *N. Pipeline*, 458 U.S. at 91 (Rehnquist, J. concurring) (allowing Art. I judge to "decide [a] lawsuit over [defendant's] objection [is] violative of Art. III of the United States Constitution."). For example, in *Gomez v. United States*, 490 U.S. 858, 875 (1989), the Supreme Court held that the selection of a jury in a felony trial without a defendant's consent was beyond the power of a magistrate judge. Consent, the Court held in *Peretz v. United States* two years later, "significantly change[d] the constitutional analysis." 501 U.S. 923, 932 (1991).

"[A]llowing Article I adjudicators to decide claims submitted to them *by consent* does not offend the separation of powers so long as Article III courts retain supervisory authority over the process." *Wellness Int'l. Net. v. Sharif*, 135 S. Ct. 1932, 1944 (2015) (emphasis added). When consent has not been given, "Section [636](b)(1)'s nonconsensual reference is saved from constitutional infirmity by the retention in the Article III judge of the ultimate adjudicatory power, to be exercised after assistance from and upon the recommendation of the magistrate." *Jeffrey S. v. State Bd. of Educ. of State of Ga.*, 896 F.2d 507, 512-13 (11th Cir. 1990).

### C. The parties did not consent to Magistrate Pead and there was no Article III Judge exercising supervision over the case

General Order 11-001 dictates that cases "assigned" to magistrates are actually "deemed assigned to the Chief Judge and referred to the magistrate judge for the exercise of all authority

3

under 28 U.S.C. [§] 636(b)." As presently worded, the General Oder is constitutional because the assignment to Chief Judge Nuffer cures the "constitutional infirmity" of the "nonconsensual reference" to a magistrate judge. *See Jeffrey S.*, 896 F.2d at 512. However, in this case, the assigning process worked contrary to that procedure. The Civil Cover Sheet for the case, Dkt. No. 1, states in its bottom right corner that the case was "Assigned To: Pead, Dustin B." The docket text confirms: "Case has been indexed and assigned to Magistrate Judge Dustin B. Pead." *Id.* There is no evidence in the record that Case No. 2:15-cv-00649 was assigned to anyone other than Magistrate Pead or that it was "referred" to him by an Article III Judge.[2] Such an assignment, while constitutionally ambiguous at best, normally poses little risk of actually violating a party's rights because very little of substance normally happens before the Consent/Reassignment Forms are filed. Here however, ETI's *ex parte* Motion exposed the ambiguity, resulting in complete adjudication of a case-shaping issue by a magistrate.

Magistrate Pead likely believed he *was* the judge for the case. After all, his name and no other appeared on the case docket. He acted as the judge and issued the Order.[3] Because the

---

[2] The incongruity between General Order 11-001 and the sole assignment of Magistrate Pead may be explained by reference to an earlier General Order. The Consent/Reassignment Form currently in use states that in "accordance with . . . **General Order 07-001** . . . you are notified that the above entitled action has been assigned to a . . . Magistrate Judge." *See, e.g.*, Dkt No. 16 (emphasis added). General Order 07-001 "establishe[d] a pilot program for maximizing the judicial resources of the court . . . by encouraging litigants to consent to the exercise of full civil case management by the magistrate judges" but it lacked the constitutional safeguard of assigning matters to an Article III Judge and then referring them to a magistrate. *See* Declaration of Brandon C. Martin ("Martin Decl.") ¶ 2, Ex. A. Although General Order 07-001 expired on September 17, 2009, *id.* at 2, it appears that the assigning process it orders may have been used to assign a magistrate to this case and to other cases filed after it expired. *See, e.g., Terry v. Colvin*, 2015 WL 4693895, at *1 n.1 (D. Utah Aug. 6, 2015) ("On November 17, 2014, the parties consented to the undersigned magistrate judge . . . pursuant to General Order 07-001[.]").

[3] This explains why the Order did not start "[c]urrently before the court pursuant to a 28 U.S.C. §

4

parties had not consented, "the ultimate decisionmaking authority respecting all pretrial motions" should have "clearly remain[ed] with the district court." *N. Pipeline*., 458 U.S. at 79, but no Article III judge was assigned to the case to exercise that authority. Thus, Magistrate Pead exceeded his "proper role" which "is to advise and assist the real judge[,] . . . not to be the real judge, only called something else." *Geras v. Lafayette Display Fixtures, Inc.*, 742 F.2d 1037, 1047 (7th Cir. 1984) (Posner, J., dissenting)

## II. Magistrate Pead was not authorized to issue the Order on ETI's dispositive motion

Even if the Court holds that Magistrate Pead was acting under the aegis of Chief Judge Nuffer, Magistrate Pead was still without authority to issue the Order because ETI's Motion was potentially dispositive. ETI does not argue that a magistrate may issue an order on dispositive matters. Instead, it makes the categorical argument that "motions for an extension of time are considered non-dispositive pre-trial matters." Dkt. No. 32 at 6. But the law is not so simple.

### A. Whether a motion is potentially dispositive is a practical inquiry

Tenth Circuit authority requires that a motion not described on its face as one of the eight dispositive motions in Section 636(b)(1)(A) "are nevertheless to be treated as such a motion when they have an identical effect." *See Ocelot Oil*, 847 F.3d at 1462. Instead of the categorical approach advocated by ETI, the Tenth Circuit takes a practical approach that requires courts to analyze the potential effects of a motion. For instance, in *First Union Mortg. Corp. v. Smith*, the Tenth Circuit analyzed whether a magistrate's order remanding a case removed from state court was dispositive. 229 F.3d 992, 995-96 (10th Cir. 2000). The Court noted that "a number of

---

636(b)(1)(A) referral from the District Court Judge," or some variant thereof, which is how Magistrate Pead ordinarily begins orders in cases that have been referred to him. *See, e.g.,* Martin Decl. ¶ 3, Ex. B; *Dahl v. Dahl*, 2015 WL 670274, at *1 (D. Utah Feb. 17, 2015).

district courts ha[d] held that" such an order was not dispositive and that the usual rationale was that a remand order "does not address the substance of a party's claims or defenses, and effects no determination of the merits." *Id.* (quotation marks omitted). The Tenth Circuit "realize[d] that a remand order is 'not dispositive of a claim or defense of a party'" but conducted an in-depth analysis of the potential effect of remand:

> We do not think that anyone would argue seriously that a magistrate judge, without consent of the parties, could hear and determine a motion to dismiss the federal action . . . on the theory that the motion is nondispositive because a parallel action is pending in the state court. Yet in a practical sense an order of remand . . . is no less dispositive than an order of dismissal . . . as both orders have the exact same effect. . . . In sum, we believe that even if it could do so, ***Congress never intended to vest the power in a non-Article III judge to determine the fundamental question of whether a case could proceed in a Federal Court.***"

*Id.* (quoting *In Re U.S. Healthcare*, 159 F.3d 142, 145-46 (3d Cir. 1998)) (emphasis added) ("magistrate judge[] lack[ed] authority to issue the remand order"); *see also Vogel v. U.S. Office Prods. Co.*, 258 F.3d 509, 514-15 (6th Cir. 2001) ( "functional analysis"); *Christison v. Biogen Idec Inc.*, 2016 WL 3546242, at * 2 (D. Utah June 23, 2016) ("Judge Pead's Decision finding [the] motion to amend untimely would normally be reviewed [for clear error], but because it was coupled with a 'futility' analysis, the entire order is reviewed de novo [because] by declaring a proposed amendment futile, the magistrate judge has effectively engaged in the Rule 12(b)(6) analysis and has decided the amendment fails to state a claim"); 32 Am. Jur. 2d Federal Courts § 135 ("motion[s] . . . critical in shaping the nature of the litigation . . . [are] dispositive").

To Ellucian's knowledge, the Tenth Circuit has never addressed whether a motion to extend time for service under Rule 4(m) is dispositive. Thus, this Court must determine the

6

practical effect of ETI's Motion for Extension and it is with that that practical inquiry in mind that this brief now turns to the varied district court cases that have addressed this issue.

### B. ETI's Motion was "dispositive" because it was filed after the deadline

The potential outcomes on a motion for extension under Rule 4(m) that is filed after the deadline are binary: dismissal or extension. Dismissal undoubtedly disposes of a case. Thus, a motion filed in such circumstances is potentially "dispositive." Several district courts have come to this exact conclusion. *See, e.g., Mnzava v. Diverse Concepts, LLC*, 2015 WL 6449656, at *1 (E.D. Tenn. Oct. 26, 2015) (citing *Vogel*, 258 F.3d at 514-16) ("matters before the magistrate judge," including "Motion to Extend Time for Service" had "the potential to dispose of the litigation, making the motion dispositive."); *Gore v. RBA Group, Inc.*, 2009 WL 884565, at *1, *8 (S.D.N.Y. Mar. 27, 2009) (adopting magistrate R&R extending time under Rule 4(m)).

In addition, at least one Court of Appeals has considered a similar question and come to a similar conclusion. In *Blake v. Peak Prof'l Health Servs. Inc.*, plaintiff failed to make service within the 120 days, 191 F.3d 455, at *1 (7th Cir. 1999), and defendant moved for dismissal under Rule 4(m). *Id.* The magistrate denied the motion and allowed further time for service. *Id.* The district court reversed and dismissed the case. *Id.* On appeal the Seventh Circuit held that

> Rule 72(b) requires *de novo* review by the district judge whenever a pretrial matter is "dispositive of a claim or defense of a party." The magistrate judge's order ***disposed of*** [Defendant's] ***defense of insufficient service of process, and the motion was potentially dispositive of*** [Plaintiff's] ***entire case***. The order was therefore reviewable *de novo*[.] *Id.* at *2 (emphasis added).

ETI cites three cases in which it says courts have held that "motions for extension decided by magistrate judges under Rule 4(m) . . . are non-dispositive pre-trial matters."[4] *See*

---

[4] ETI also cites three other cases for a different proposition, "motions for an extension of time

7

Dkt. No. 32 at 8. But in two of ETI's cases, *Paden v. Testor Corp.*, and *Kalra v. City of New York,* 2009 WL 857391, "plaintiff sought an extension of time *prior* to the 120-day time period expiring." *Paden*, 2004 WL 2491633, at *1(N.D. Ill. Nov. 2, 2004); *Kalra*, 2009 WL 857391 at *2 (S.D.N.Y. Mar. 31, 2009) (same). Because the Rule 4(m) deadline had not expired in these cases, there would have been no basis for dismissing the complaint and the motions therefore had no potential to dispose of anything. The ruling of *Lynn v. Schultz*, the final case cited by ETI, appears inexplicable at first glance. 2013 WL 3935122, at *3 (D. Kan. July 30, 2013). In *Lynn*, the plaintiff filed a motion for an extension of time after the service deadline. *Id.* at *2. The magistrate denied the motion, but noted "[b]ecause the [magistrate's] decision . . . could be considered dispositive, plaintiff is entitled to a *de novo* review of the decision." *See* Martin Decl. ¶ 4, Ex. C at 13-14. The Court decided otherwise but explained its rationale for doing so only by citing *Paden*. 2013 WL 3935122, at *3. The *Lynn* court thus failed to comply with *Ocelot Oil*'s mandate that district courts consider the potential "effect" of a motion in determining whether it is dispositive. *See Ocelot Oil*, 847 F.2d at 1462. However, the magistrate's order stated that the prisoner plaintiff in *Lynn* was seeking extra time to serve three prison guard defendants in their individual capacities—he had already timely served those defendants in their official capacities. *See* Martin Decl. ¶ 4, Ex. C. at 3 n.3. Thus, the motion for extension in *Lynn* fits the pattern from *Paden* and *Karla*—it simply did not have the potential to dispose of the case.

---

are considered non-dispositive pretrial matters." *See* Dkt. No. 32 at 6-7. But none of the cases involved a motion to extend the time under Rule 4(m). *See Tucker v. U.S. Dept. of Army*, 56 F.3d 1384 (5th Cir. 1995) (extension of time to answer); *Anastasion v. Credit Serv. of Logan, Inc.*, 2011 WL 1376050 (D. Utah Apr. 12, 2011) (motion to extend discovery); *Cooper v. Shelby County, Tenn.*, 2010 WL 3211677 (W.D. Tenn. Aug. 10, 2010) (dispositive motion deadline).

8

Much like the court in *Lynn*, ETI's most recent brief does not offer any analysis of the potential effects of its post-deadline Motion, but the Motion itself made it plain that the only two options were "the dismissal and refiling of the Complaint" or an extension. Dkt. No. 6 at 5-6. The Motion was therefore potentially dispositive of ETI's entire claim.

### C. The motion was also dispositive of Ellucian's statute of limitations ("SOL")[5] defenses

A denial of ETI's Motion would have caused dismissal of the Complaint. *See* Rule 4(m). As ETI acknowledged in the Motion "a refiled complaint would not be" within the statute of limitations, which, according to ETI, lapsed in November 2015. *See* Dkt. No. 6 at 5. ETI does not dispute that the refiled complaint would be subject to a dispositive motion for judgment on the pleadings as outside of the SOL. *See* Dkt. No. 6 at 5-6 (admitting "statute of limitations issues"). But for the Order, Ellucian had a statute of limitations defense to ETI's Complaint and the Order was therefore dispositive of that SOL defense. Similarly, if ETI's argument that, "pursuant to the Order [ETI] served the Summons and a copy of the Complaint on Ellucian in timely fashion," *see* Dkt. No. 25 at 6, is to be believed, the Order "disposed of [Ellucian's] defense of insufficient service of process" as well. *Blake*, 191 F.3d 455, at *1.

ETI argues, without citation, that "a potential statute of limitations defense or any other defense was not at issue or before Magistrate Judge Pead" because "Ellucian had not yet pled (and still has not to date pled) a statute of limitations defense," *see* Dkt. No. 32 at 7, and thus its Motion "was not a 'dispositive' motion." *Id.* But the law does not require a defendant to assert

---

[5] As used herein Ellucian's "SOL defense" refers only to a defense based on ETI's knowledge of Ellucian's use of the ELLUCIAN Trademark from November 2012. Ellucian reserves all rights to assert a statute of limitations based on earlier knowledge.

9

defenses before it has been served. Disposal of a yet-to-be-served party's statute of limitations defense can render a motion dispositive. In *Lundy v. Adamar of New Jersey, Inc.*, the Third Circuit considered a plaintiff's motion to "amend [its] complaint to include an additional defendant" after the service deadline and "the [applicable] statute of limitations had expired." 34 F.3d 1173, 1174-77 (3d Cir. 1994). A magistrate granted the motion. *Id.* at 1177. The district court disagreed, *id.* at 1182-83, and the Third Circuit held that the magistrate's grant of leave to amend "was dispositive of [the third-party's] statute of limitations defense and the district court, accordingly, was free to rule *de novo.*" *Id.* at 1183 n.13.

Thus, the fact a party has not yet asserted it does not allow a magistrate judge to issue an order that is dispositive of a statute of limitations defense that the party could assert absent the magistrate judge's order. *See also Amaya v. Garden City Irrigation, Inc.*, 645 F. Supp. 2d 116, 120 (E.D.N.Y. 2009) (although grant of leave to amend is generally considered nondispositive, "a ruling that a claim is not time-barred is dispositive," and is subject to *de novo* review); *Allendale Mut. Ins. Co. v. Rutherford*, 178 F.R.D. 1, *1 (D. Me. 1998) (motion to amend to include an affirmative statute of limitations defense was dispositive).

The Order was dispositive of Ellucian's SOL defense, regardless of the fact that Ellucian had not asserted such a defense at the time of the Order, and ETI has cited no authority that would support a finding to the contrary.

## CONCLUSION

For the foregoing reasons, and for the reasons in its Motion to Dismiss and Reply in support thereof, Ellucian respectfully requests that the Court grant its Motion to Dismiss.

10

Dated: July 26, 2016    Respectfully submitted,

/s/ Erik A. Christiansen
Erik A. Christiansen (UT #7372)
PARSONS BEHLE & LATIMER
#1800, 201 Main Street
Salt Lake City, UT 84111
Telephone: (801) 532-1234
Facsimile: (801) 536-6111
Email: jwhite@parsonsbehle.com
Email: echristiansen@parsonsbehle.com

/s/ *Brandon C. Martin*
Jeffrey E. Ostrow (*pro hac vice*)
Brandon C. Martin (*pro hac vice*)
SIMPSON THACHER & BARTLETT LLP
2475 Hanover Street
Palo Alto, CA 94304
Telephone: (650) 251-5030
Facsimile: (650) 251-5002
Email: jostrow@stblaw.com
Email: bmartin@stblaw.com

*Attorneys for Defendant Ellucian Company, L.P.*

# CERTIFICATE OF SERVICE

On this 26th day of July, 2016, I hereby certify that I electronically filed the foregoing **ELLUCIAN'S ADDITIONAL REQUESTED BRIEFING IN SUPPORT OF ITS MOTION TO DISMISS FOR LATE SERVICE OF PROCESS PURSUANT TO FED. R. CIV. P. 12(b)(5) AND 4(m) AND FOR FAILURE TO STATE A CLAIM UNDER FED. R. CIV. P. 12(b)(6) AND 8** with the Clerk of Court using the CM/ECF system that will send an electronic notification to counsel of record for all of the parties.

/s/ Erik A. Christiansen